IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**JANE E. DICKINSON,**

    **Plaintiff,**

    v.                                                                   Civ. No. 24-787 JCH/SCY

**U.S. BANK TRUST NATIONAL
ASSOCIATION, as Trustee for LSF9
MASTER PARTICIPATION TRUST,
McCARTHY HOLTHUS, LLP, and
FAY SERVICING, LLC,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

    This case brought under the federal Fair Debt Collection Practices Act is before the Court on *Defendants' Joint Motion to Dismiss Plaintiff's Complaint Or, In the Alternative, to Stay* [Doc. 17] to which Plaintiff has filed a response [Doc. 19] and Defendants their reply [Doc. 23]. Plaintiff also filed a Notice [Doc. 29] updating the Court on the status of related state court litigation. Defendants argue that Plaintiff's claims should be dismissed because she should have brought her claims against them in a pending, related state court case. In the alternative, Defendants ask the Court to stay this case until the state court case is resolved. Based upon the Notice [Doc. 29], it appears that the state court litigation may be moving toward a resolution; however, that information does not bear on the Court's decision on the motion before it. For the reasons more fully set forth herein, the motion to dismiss should be denied.

## BACKGROUND

This case stems from a foreclosure action. According to Plaintiff's Complaint [Doc. 1], Plaintiff Jane Dickinson owns and resides at her home ("the home") in Santa Fe, New Mexico. *Id*. at 3, ¶ 10. In 2005, Plaintiff signed a promissory note for $255,000, secured by a mortgage. The original lender transferred its rights under the note and mortgage to First Horizon Home Loan Corporation. In 2010, First Horizon assigned the note and mortgage to Fannie Mae. *Id*. at 4, ¶ 20. Later that day, Fannie Mae exercised its option to accelerate the debt; it then initiated a foreclosure action against Plaintiff in New Mexico state district court. In 2012, Plaintiff filed for Chapter 7 bankruptcy, and the bankruptcy court granted her a discharge of her debts, including the debt she owed under the note and mortgage. *Id*. at 5, ¶ 24-25. In May of 2013, Fannie Mae notified the state district court of the discharge and that as a result, it would be proceeding in its foreclosure action on the property *in rem* only. *Id.* at ¶ 27. That foreclosure case was still ongoing in December of 2016, when Fannie Mae assigned its rights under the mortgage to Defendant LSF9 Master Participation Trust ("LSF9"). *Id*. at ¶ 28. The foreclosure case proceeded with LSF9 acting as Fannie Mae's successor in interest, but in 2018 the state district court dismissed the foreclosure action without prejudice. *Id*. at 29-30.

LSF9 appealed the dismissal of the foreclosure action to the New Mexico Court of Appeals, where it was represented by Defendant McCarthy Holthus, LLP ("McCarthy Holthus"). *Id*. at p. 6, ¶ 31. In February of 2022, the appellate court affirmed the district court. *Id.* at ¶ 32. Plaintiff alleges that this event triggered a six-month statute of limitations on Defendants' right to file a new action to enforce its rights under the note and mortgage. *Id*. at ¶ 33-35.

Nine months later, on May 24, 2023, McCarthy Holthus sent Plaintiff a letter on behalf of LSF9 titled "Notice of Default and Right to Cure; Notice of De-Acceleration and Intent to Re-

2

Accelerate." *Id*. at p. 7, ¶ 38. The letter acknowledged that McCarthy Holthus may be considered a debt collector attempting to collect a debt. It also informed Plaintiff that while any amounts due prior to December 1, 2017, had been forgiven, she was in default under the mortgage, and that LSF9 asserted its right to "re-accelerate the amounts due" under the mortgage if she did not pay the full amount due, which was over $223,000. *Id*. at ¶¶ 39-45. In addition, Plaintiff alleges that McCarthy Holthus' letter stated that the "total monthly payments due December 2017 to June 2023" was $138,817.00, but that even if the note and mortgage were enforceable, the total monthly payments due would only have been $95,414.46. *Id*. at ¶ 48-49. The letter also warned Plaintiff that if she did not cure the default, LSF9 had the right to file a foreclosure action and pursue a deficiency judgment. *Id*. at p. 8, ¶ 51. LSF9's loan servicer, Defendant Fay Servicing, LLC ("Fay Servicing"), sent Plaintiff similar letters on June 7, 2023, and July 19, 2023. *Id*. at p. 1, ¶ 8; p. 9, ¶ 53-58; p. 10, ¶ 60-65.

As a result of Defendants' efforts to collect on a debt that Plaintiff viewed as time-barred, on September 19, 2023, Plaintiff filed a complaint against LSF9 to quiet title in New Mexico State District Court ("quiet title action") and informed McCarthy Holthus. *Id*. at p. 11, ¶ 67-68. After it was served, LSF9 did not timely appear in the quiet title action, and on August 8, 2022, the state court entered a default judgment that provided that LSF9 had lost its right to enforce the note and/or mortgage. *Id*. at ¶ 69-70.

On November 29, 2023, McCarthy Holthus filed a new foreclosure action against Plaintiff on behalf of LSF9 ("second foreclosure action") in New Mexico State District Court in which it claimed to "accelerate[] all sums due . . .[p]ursuant to the terms of the Note and Mortgage" and asserting that Plaintiff owed $275,097.19. *Id*. at p. 12, ¶ 71-73. In this action, LSF9 seeks an *in personam* money judgment against Plaintiff, and the complaint does not inform Plaintiff that

3

LSF9's claims may be time barred. *Id*. at ¶ 75-76. On December 5, 2023, LSF9 (again through its counsel, Defendant McCarthy Holthus) asked the state district court to set aside the default judgment in the quiet title action on the grounds that Plaintiff still owed the debt and LSF9 had filed the second foreclosure action in order to collect on the note and mortgage. *Id*. at ¶ 77-78. On February 26, 2024, the state district court entered an order setting aside the default judgment in the quiet title action. *Id*. at p. 13, ¶ 80. A few weeks later, LSF9 made a counterclaim against Plaintiff in the quiet title action seeking foreclosure and an *in personam* money judgment. *Id*. at ¶ 81. Again, LSF9 asked for $275,097.19, which is a sum more than $50,000 greater than that which it demanded in its May 24, 2023, letter.

Plaintiff brings claims against LSF9; its counsel, McCarthy Holthus; and Fay Servicing under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e, et al., for (1) false, deceptive, or misleading representations or means, (2) collection of a time-barred debt, (3) attempting to collect a debt discharged in bankruptcy, (4) attempting to collect debt not allowed by the modification agreement, and (5) attempting to collect a debt that Defendants McCarthy Holthus and LSF9 had forgiven (Counts 1 through 5). Plaintiff also brings claims against all Defendants under New Mexico Unfair Practices Act ("UPA"), NMSA 1978, § 57-12-1(D)-(E) and NMAC 12.2.12 (Counts 6 and 7). Finally, Plaintiff has a claim against all Defendants for tortious debt collection (Count 8).

On September 4, 2025, Plaintiff filed a notice [Doc. 29] informing the Court that on August 27, 2025, the state district court in the quiet title action "orally granted Plaintiff's motions to dismiss LSF9's counterclaims for foreclosure and unjust enrichment. Among other reasons for granting the motions, the district court determined that the statute of limitations barred

enforcement of the mortgage in question." *Id*. at 2-3. Defendants have not filed a response to the notice.

## DISCUSSION

I. **Limits On the Court's Jurisdiction**

    A. **State Court Doctrine of Priority Jurisdiction**

Defendants assert that in order to adjudicate Plaintiffs' FDCPA claims, this Court would have to first determine whether Defendants' attempts to foreclose under the note and mortgage and collect the debt are time barred, which is an issue currently being litigated in state court. *Id*. at 5. Therefore, Defendants suggest, this Court must dismiss Plaintiff's claims in deference to the first-filed state court action. In support of their argument, Defendants cite the New Mexico doctrine of priority jurisdiction. In *Valdez v. Ballenger*, the New Mexico Supreme Court explained the doctrine:

> Generally, a second suit based on the same cause of action as a suit already on file will be abated where the first suit is entered in a court of competent jurisdiction in the same state between the same parties and involving the same subject matter or cause of action, if the rights of the parties can be adjudged in the first action.

1978-NMSC-055, ¶ 2, 581 P.2d 1280, 1281 (quoting *State ex rel. Kermac Nuclear Fuels Corp. v. Larrazolo*, 1962-NMSC-134, 70 N.M. 475 (1962)).

Defendants' argument that the state court doctrine of priority jurisdiction should bar this Court from exercising jurisdiction fails for two reasons. First, the doctrine applies only when the conflicting lawsuits are filed in state courts. For example, in *Valdez*, the seminal New Mexico case on the doctrine, similar lawsuits arising from a single car accident were filed in different counties within the same state. *Id*. at 1281. Because both courts had a coequal basis to assert jurisdiction, the first-filed case took priority. In contrast, in this situation we have one lawsuit filed in state court

and a second lawsuit filed in federal district court. However, the two courts are not only adjudicating different legal claims, but also have differing grounds to assert jurisdiction. Defendants argue that priority jurisdiction should operate like *res judicata* because the two doctrines are based on similar rationales—avoidance of potential conflicts between courts making contradictory decisions relating to the same controversy and prevention of multiplicity of suits. *Id*. at 5-6. However, the cases Defendants rely upon are distinguishable and do not apply here.

     Second, federal courts have rejected Defendants' argument in favor of priority jurisdiction. It is no coincidence that Defendants rely exclusively on cases from New Mexico state courts and fail to cite a single decision from any federal court holding that its jurisdiction—which flows from federal law—is constrained by a state court common law doctrine. In fact, to this Court's knowledge no court in the United States District Court for the District of New Mexico or the Tenth Circuit Court of Appeals has applied New Mexico's priority jurisdiction doctrine in the manner suggested by Defendants such that a federal court should cede its jurisdiction to a state district court. This Court has noted that "only a handful of New Mexico cases even discuss the doctrine in more than passing fashion. Moreover, the Court is not aware of any case dismissed or stayed by a federal court in this district or by the Tenth Circuit pursuant to the doctrine of priority jurisdiction." *Jesmer v. W. Coast Res., LLC*, No. 08-631 JCH/WDS, 2008WL11450474, at *2 (D.N.M. Nov. 13, 2008) (citations omitted). Importantly, this is because the rule "appears to involve only cases filed in more than one *state* court." *Burlington Ins. Co. v. Las Cruces Gospel Rescue Mission, Inc*., No. 11-544 WJ/WPL, 2011WL13284626, at *4 (D.N.M. Oct. 12, 2011) (emphasis added). *See also Coello-Pagan v. Wells Fargo Bank, N.A*., No. 13cv527 MV/KRS, 2022 WL 74338, at *4 (D.N.M. Jan. 7, 2022) ("The Court agrees with the reasoning of these courts and finds that the doctrine of priority jurisdiction does not apply here because the cases were not both filed in state court.").

Because the issue here involves potential friction between decisions in state district court and federal district court, the New Mexico state court doctrine does not apply.[1] Plaintiff fails to point to any federal court that has reached a contrary conclusion.

In light of Plaintiff's September 4 notice [Doc. 29], it appears that the state court may have already determined that Defendants have no right to collect the debt at issue, potentially eliminating possible friction between the state and federal cases. However, whether or not those issues have been fully resolved in state court is immaterial to this Court's ruling that this Court's jurisdiction is not limited by the New Mexico doctrine of priority jurisdiction.

### B. The Court's Inherent Discretion to Stay

In the alternative, Defendants argue that in the event the Court declines to dismiss, it should use its inherent authority to stay this case until entry of final judgment in the second foreclosure action, relying on *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). Defendants reason that Plaintiff's claims in this case are premised on the same underlying facts as the second foreclosure action and that a determination of the parties' rights in that case will determine whether Plaintiff's causes of action under the FDCPA, the UPA, and tort law may proceed in this case.

---

[1] There are federal absention doctrines developed to deal with conflicts between cases pending in both federal and state courts. As a general rule, "'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction....'" *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 817 (1976) (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). But the *Colorado River* absention doctrine counsels federal absention from jurisdiction under extraordinary circumstances when "reasons of wise judicial administration" must weigh in favor of "permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding." *Id*. at 818. Granted, these occasions are not ordinarily encountered. Yet such "circumstances, though exceptional, do nevertheless exist." *Id*. Neither party argues that *Colorado River* abstention is appropriate in this case, so the Court does not address it. Doc. 19 at 6-8; Doc. 23 at 7.

A court may enter a stay of proceedings incidental to its inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). However, the party asking for the stay "must make out a clear case of hardship or inequity in being required to go forward." *Id*. at 255. The Tenth Circuit has cautioned that "the right to proceed in court should not be denied except under the most extreme circumstances." *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc*., 713 F.2d 1477, 1484 (10th Cir. 1983) (citation omitted).

Here, Defendants have failed to make a clear case that they will suffer inequity or hardship if this case stemming from their debt collection efforts goes forward. In fact, Defendants have not addressed this requirement at all. Instead, Defendants seem to argue that both the litigation in state court and Plaintiff's unfair debt collection claims in this Court hinge entirely on whether LSF9's right to enforce the note and mortgage is time-barred. But that is not entirely true. For example, in Count 3 of her Complaint [Doc. 1 at 16], Plaintiff claims that Defendants violated the FDCPA by attempting to collect a debt that had been discharged in bankruptcy by seeking an *in personam* judgment against her. Similarly, in Count 4, *id*. Plaintiff alleges that even if Defendants' claims are not time-barred, it misrepresented the amount owed by Plaintiff in violation of the FDCPA. In Count 5, *id*. at 17, Plaintiff alleges that Defendants unlawfully attempted to collect over $51,000 in debt that had been forgiven. And finally, in one portion of Count 2, *id*. at 14, Plaintiff asserts that Defendants unlawfully represented to her that under the FDCPA, they could withdraw the previous acceleration of the mortgage and then "re-accelerate the amounts due." None of these claims hinge on the statute of limitations issue, but rather on whether Defendants made misrepresentations regarding the underlying debt in violation of the FDCPA. Courts have concluded that state court debt collection cases centering on a party's right to collect a debt are

independent of the question of whether collection efforts themselves violated the FDCPA. *See, e.g., Wiley v. Portfolio Recovery Assocs., LLC,* 20-cv-00737, 2020 WL 6136146 at *3-4 (D. Minn. Oct. 19, 2020) (unpublished); *Becker v. Portfolio Recovery Assocs., LLC*, 20-cv-00791 SRN/KMM, 2020 WL 5366386 at *4 (D. Minn. Sept. 8, 2020) (unpublished); *McCrobie v. Palisades Acquisition XVI, LLC*, 359 F. Supp. 3d 239, 249 (W.D.N.Y. 2019) ("When a federal proceeding concerns defendants' debt-collection methods, while the state-court collection actions involve the validity of the underlying debts, the underlying collection actions will not resolve plaintiffs' claims, and abstention would not be appropriate.") (internal quotations omitted) (quoting *Fritz v. Resurgent Cap. Servs., LP*, 955 F. Supp. 2d 163, 175 (E.D.N.Y. 2013)).

In short, Defendants have failed to meet their burden to show that they will suffer inequity or hardship if the Court does not grant a stay. Further, whether Defendants' debt collection methods violated the FDCPA is a separate question from whether the underlying debt is valid. Accordingly, the request to stay will be denied.

## II.    Litigation Privilege

Defendants contend that all claims against Defendant McCarthy Holthus should be dismissed because Plaintiff's claims against the law firm are barred by litigation privilege. Doc. 17 at 8-9. Defendants cite two New Mexico Supreme Court cases, *Superior Constr., Inc. v. Linnerooth*, 1986-NMSC-008, 712 P.2d 1378 (1986) and *Helena Chem Co. v. Uribe*, 2012-NMSC-021, 281 P.3d 237, 241 (N.M. 2012), for the proposition that attorneys have an absolute privilege to publish false and defamatory matter prior to or during the course of a judicial proceeding in which he or she participates as counsel. The policy behind this common law privilege is to afford "attorneys as officers of the court the utmost freedom in their efforts to secure

justice for their clients." *Uribe*, 281 P.3d at 241. However, these state court cases do not address federal FDCPA claims stemming from attorneys' debt collection efforts, but rather common law claims such as defamation, libel, slander, and slander of title. Therefore, these cases are distinguishable.

Furthermore, a common law privilege for attorneys engaged in litigation does not supersede attorney liability under a federal statute such as the FDCPA. Federal courts that have addressed the issue have reached this conclusion. For example, in *Ogbin v. Fein, Such, Kahn and Shepard, P.C.*, 414 Fed. Appx. 456, 458 (3d Cir. Feb. 22, 2011), the court found that under New Jersey law, the litigation privilege protected a law firm from negligence and intentional misrepresentation claims based on the law firm's misstatements in letters, but the privilege did not absolve the firm from FDCPA liability. *See also Sayyed v. Wolpoff & Abramson*, 485 F.3d 226 (4th Cir. 2007) ("The statutory text makes clear that there is no blanket common law litigation immunity from the requirements of the FDCPA."). And more generally, common law litigation privileges provide no defense to FCDPA claims. *See, e.g., Oei v. N. Star Capital Acquisitions, LLC*, 486 F. Supp. 2d 1089, 1098 (C.D. Calif. 2006) (concluding that California's litigation privilege does not apply to federal causes of action like the FDCPA); *Blevins v. Hudson & Keyse, Inc.*, 395 F. Supp. 2d 662, 666-68 (S.D. Ohio. 2004) (concluding that state law litigation privilege does not bar FDCPA claims); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich*, 502 F. Supp. 2d 686, 697 (N.D. Ohio 2007). Most conclusively, the Supreme Court has concluded that the FDCPA applies to attorneys and their "litigation activities." *Heintz v. Jenkins*, 514 U.S. 291, 297-99 (1995).

Under the FDCPA, a "debt collector" is (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection

of any debts," or (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Plaintiff has alleged facts against McCarthy Holthus sufficient to satisfy this standard by sending her letters through the mail to collect on an alleged debt. Debt collectors under the FDCPA may be third-party collection agencies like Defendant Fay Servicing, entities whose principal purpose is debt collection, mortgage servicers that acquire accounts after default, and attorneys such as McCarthy Holthus who primarily engage in debt collection activities, "even when that activity consists of litigation." *Heintz*, 514 U.S. at 299.

Plaintiff has alleged facts that are sufficient to survive a Rule 12(b)(6) motion on its FDCPA claims against McCarthy Holthus, and therefore the motion to dismiss will be denied.

**IT IS THEREFORE ORDERED** that *Defendants' Joint Motion to Dismiss Plaintiff's Complaint Or, In the Alternative, to Stay* [Doc. 17] is **DENIED**.

_____
SENIOR UNITED STATES DISTRICT JUDGE